'
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL C. STOESSER,

                        Plaintiff,

           V.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

**REPORT AND
RECOMMENDATION**

08-CV-643
(GLS/VEB)

## I. INTRODUCTION

In November of 2004, Plaintiff Daniel C. Stoesser applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since September 15, 2001, due to physical impairments.  The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorney, Charles E. Binder, Esq., commenced this action on June 19, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 13, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 9).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on November 30, 2004, alleging disability beginning on September 15, 2001. (T at 24, 56-58).[1]  The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").   A hearing was held in Albany, New York on July 14, 2006, before ALJ Carl Stephan.  (T at 200).  Plaintiff, accompanied by an attorney, Angela Yeboah, Esq., appeared and testified. (T at 202-214).  On August 11, 2006, ALJ Stephan issued a decision denying Plaintiff's applications. (T at 24-33).  The ALJ's decision became the Commissioner's final decision on May 1, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 3-6).

Plaintiff timely commenced this action on June 19, 2008. (Docket No. 1).   The Commissioner interposed an Answer on September 29, 2008. (Docket No. 5).  Plaintiff filed a Brief in support of the action on November 13, 2008. (Docket No. 7).  The Commissioner filed a Brief in opposition on November 26, 2008. (Docket No. 8).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for calculation of benefits.

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 10).

## III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; <u>Ferraris v. Heckler</u>, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2008.  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 15, 2001, the alleged onset date.  The ALJ concluded that Plaintiff had the following impairment considered "severe" under the Act: degenerative disc disease of the lumbar spine. (T at 26).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 27).   The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work activity that requires only occasional bending, squatting, and kneeling. (T at 28).

The ALJ concluded that Plaintiff was not able to perform his past relevant work. (T at 32).  Considering Plaintiff's age (40 as of the alleged onset date, 45 as of the date of the ALJ's decision), education (high school), work experience, and residual functional capacity,

the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. (T at 32).  Accordingly, the ALJ determined that Plaintiff had not been under a disability and was not entitled to benefits from the date of alleged onset to the date of the ALJ's decision. (T at 33).  As noted above, the ALJ's decision became the Commissioner's final decision on May 1, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 3-6).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers two (2) principal arguments in support of his position.  First, he contends that the ALJ did not properly apply the treating physician's rule.  Second, Plaintiff argues that the ALJ erred when evaluating his credibility.  This Court will address each argument in turn.

### a.    Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight

---

[3]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, Dr. Amy Grace, Plaintiff's treating physician, noted that Plaintiff suffered from "pretty significant degenerative disc disease at three levels." (T at 171).  In June of 2005, Dr. Grace opined that Plaintiff was "completely and permanently disabled from his former profession . . . ." (T at 171).

In July of 2006, Dr. Grace completed a Multiple Impairment Questionnaire, in which she offered the following findings: Plaintiff suffered from multilevel degenerative disc disease of the back; his prognosis is "guarded;" Plaintiff can sit for 4 hours in an 8-hour day, stand/walk for 2 hours in an 8-hour day, must get up and move around every hour, and would need to rest approximately ever hour for 15 minutes.  Dr. Grace opined that Plaintiff can lift/carry 5 pounds frequently, 5-10 pounds occasionally, but can never lift/carry more than 10 pounds; Plaintiff would likely be absent from work due to his condition more than 3 times a month; and he cannot kneel, bend, or stoop. (T at 188-94).

The ALJ gave "great weight" to Dr. Grace's opinion with regard to Plaintiff's ability to stand, walk, lift/carry, use his arms or hands, and keep his neck in a constant position while sitting at a desk or computer. (T at 31).  However, the ALJ gave "little weight" to Dr. Grace's opinion concerning Plaintiff's ability to sit for a sustained period of time. (T at 31).

7

The decision to discount Dr. Grace's finding as to Plaintiff's ability to sit was significant as an inability to sit for more than 4 hours in an 8-hour work day (as determined by Dr. Grace) would seriously erode Plaintiff's ability to perform sedentary work.[4]

The ALJ offered three (3) principal reasons to support his decision to discount this aspect of Dr. Grace's findings.  First, he noted that Plaintiff had a generally conservative course of treatment and concluded that "there were no consistent, ongoing positive findings in relation to diminished reflexes, sensory changes, muscle strength, or motor strength." (T at 31).  Second, the ALJ found that Plaintiff's activities of daily living indicated an ability to sit for longer periods of time. (T at 31).   Third, the ALJ gave "great weight" to the assessment of Dr. Mark Henderson, a consultative examiner, who opined that Plaintiff had a "mild restriction" with regard to prolonged sitting.   Each of the ALJ's reasons is problematic for the reasons stated below.

### i.     Lack of "Consistent, Ongoing Positive Findings"

In rejecting Dr. Grace's finding with respect to Plaintiff's ability to sit for extended periods, the ALJ emphasized the absence of "consistent, ongoing positive findings in relation to diminished reflexes, sensory changes, muscle strength, or motor strength." (T at 31).  This is exactly the sort of "circumstantial critique by [a] non-physician[]" that the Second Circuit has cautioned "must be overwhelmingly compelling in order to overcome a medical opinion." Wagner, 906 F.2d  at 862.

Here, the ALJ's critique is not overwhelmingly compelling, particularly because the

---

[4]Sedentary work "is defined as involving only occasional standing and walking, the lifting of no more than ten pounds at a time, and the occasional lifting and carrying of light objects." Schaal v. Apfel, 134 F.3d 496, 501 n. 6 (2d Cir. 1998); see also 20 C.F.R. § 404.1567. "Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996).

physical findings he cited are by their very nature intermittent. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 1.00(D) (explaining that in the case of musculoskeletal impairments, "[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation").

A review of the record reveals that Plaintiff consistently, albeit intermittently, exhibited the abnormal physical findings associated with a low back impairment. On September 24, 2001, Plaintiff reported to the emergency room with complaints of low back pain after a motor vehicle accident and exhibited paraspinal muscle spasms and tenderness. (T at 140).  On November 9, 2004, on his first visit to Dr. Grace's office, Plaintiff had limited range of motion, positive straight leg raising ("SLR") tests, acutely tender muscles, and a slight decrease in tactile sensation in both extremities. (T at 181).

An MRI examination of Plaintiff's lumbar spine on November 15, 2004, revealed narrowing and desiccation at the L2-3 level with a focal midline extrusion resulting in compromise of the thecal sac; moderate narrowing and partial desiccation at the L4-5 level with significant process extending into the canal, which represented a combination of degenerative changes and extrusion causing considerable compromise of the thecal sac and constriction of the neuroforamina on the right side, which may lead to peripheral nerve root impingement, along with evidence of early facet arthropathy resulting in mild stenosis; and significant loss of disc space and desiccation at the L5-S1 level with mild midline bulge and some compromise of the canal anteriorly, without clear evidence of significant foraminal constriction. (T at 186-87).

On December 21, 2004, Plaintiff exhibited a positive SLR test on the right side. (R.

at 178). On January 3, 2005, Dr. Henderson's consultative physical examination (discussed in further detail below) revealed, *inter alia*, a very mild right leg limp, only the ability to squat halfway,  limited range of motion in the lumbar spine, marked paraspinal tenderness in the right lower lumbar and sacroiliac area, positive SLR tests on the right in the supine and seated positions, decreased range of motion in the right hip, and decreased strength in the right hip and right knee. (T at 152-53).

Spinal x-rays performed on the same day showed disc space narrowing at the L2-3, L4-5 and L5-S1 levels. (T at 153, 156). On February 9, 2005, Ernest R. Levy, M.D., a neurosurgeon, examined Plaintiff and found some muscle spasms in the lower lumbar region and pain at the extremes of Plaintiff's range of motion (T at 165). After reviewing Plaintiff's MRI report, Dr. Levy opined that Plaintiff "[u]nfortunately . . . has at least three-level disease. It would be difficult to localize where his back pain is coming from and, even then, a spinal fusion would require L4, L5 and S1 and probably L2-3, which means that we could not leave L3-4 as a floating segment. On balance, surgery is not a good option for him and he needs to continue with a conservative approach." (T at 165).

On May 4, 2005, Plaintiff "appear[ed] uncomfortable" and had acutely tender muscles in the lumbosacral region and positive SLR tests bilaterally. (T at 174). On June 13, 2005, Plaintiff was uncomfortable walking and getting on the examination table, had diffuse tenderness, positive SLR tests, and slightly diminished reflexes. (T at 171). On August 26, 2005, Plaintiff was uncomfortable with any manipulation and wearing a back brace. (T at 169). On January 5, 2006, Plaintiff had muscle tenderness. (T at 167).

In light of this medical evidence, the ALJ's emphasis on the lack of ongoing positive physical findings was both unsupported by the record and misplaced.  Although the ALJ

was ultimately responsible for determining whether Plaintiff is disabled, he does not have the discretion to substitute his judgment for that of the treating physician or to engage in his own evaluation of the medical findings. See Balsamo, 142 at 81 ("[I]t is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . . While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him.") (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795 (2d Cir. 1983)); see also Filocomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y.1996) ("[T]he ALJ should not have engaged in his own evaluations of the medical findings.").

Moreover, the ALJ appears to have incorrectly concluded that the conservative course of treatment suggested that Plaintiff's condition was not as severe as assessed by Dr. Grace.  For example, the ALJ noted that Plaintiff was "not a surgical candidate" and that he received "continuous treatment only from his primary care physician, not from a specialist."  (T at 30).  However, as discussed above, Dr. Levy, a neurosurgeon, determined that Plaintiff was not a good candidate for surgery, not because his back condition was not significant or extremely painful, but because surgery was, "unfortunately," unlikely to offer any pain relief. (T at 183).  Although physical therapy was suggested, it tended to increase rather than alleviate Plaintiff's pain. (T at 192).

Thus, contrary to the ALJ's argument, the fact that Plaintiff was not a good surgical candidate and the fact that he received treatment from his primary care doctor (as opposed to a specialist) did not suggest that Plaintiff's condition was less severe than indicated and/or that he was capable of sitting for extended periods of time.  It is not clear what a

11

specialist could offer Plaintiff in the way of treatment and surgery was unlikely to have any positive effect.  As such, these factors cannot be considered as supporting the ALJ's decision to discount Dr. Grace's assessment.  See Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir.2008)("Nor is the opinion of the treating physician to be discounted merely because he has recommended a conservative treatment regimen.  The ALJ and the judge may not 'impose[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.... [A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'")(quoting Shaw v. Chater, 221 F.3d 126, 134-35(2d Cir.2000)).

Accordingly, this Court concludes that the ALJ erred in discounting Dr. Grace's sitting limitation.  Given the evidence of record, that assessment should have been afforded controlling weight.

### ii.      Activities of Daily Living

Plaintiff indicated that he customarily performed household cleaning, took his spouse to work, read the newspaper employment listings, watched television, and played video games. (T at 105).  He cooks simple meals, goes grocery shopping, and plays cards with family members once or twice a week. (T at 106-107).

The ALJ concluded that Plaintiff's activities of daily living "do not suggest that he is totally incapacitated by his pain." (T at 30).  In addition, the ALJ cited the fact that Plaintiff "habitually engaged in sedentary activities, such as card playing, television, computer research and video games" in support of his decision to discount Dr. Grace's assessment concerning Plaintiff's ability to sit for prolonged periods. (T at 31).  The ALJ's finding in this

12

regard is flawed.

First, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, "as people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Second, the question is not whether Plaintiff can sit for *some* period of time or perform daily activities on a limited basis, but whether his treating physician correctly assessed that he cannot sit for more than 4 hours in an 8-hour workday.  Nothing in the Plaintiff's testimony concerning his activities of daily living indicated an ability to sit for longer periods than assessed by Dr. Grace.

Plaintiff testified that he cannot sit for more than an hour. (T at 207, 213).  With regard to his computer research activities, Plaintiff clarified that the activities were not continuous and that he was only able to sit at the computer for 30-45 minutes before he needed to stand up. (T at 212).  He clearly stated that he did not have the ability to "sit behind the desk." (T at 212).  The ALJ cited Plaintiff's testimony concerning computer research in support of his decision to discount Dr. Grace's findings, without accounting for the clarification that the research involved periods of sitting much less than what would be required to sustain sedentary work.  Thus, contrary to the ALJ's assessment, the Plaintiff's activities of daily living did not provide support for the decision to discount Dr. Grace's findings.

### iii.    Consultative Examiner

Dr. Mark Henderson, D.O., performed an orthopedic examination on January 3, 2005.  Dr. Henderson opined, *inter alia*, that Plaintiff was markedly restricted from heavy lifting/carrying, moderately limited in terms of prolonged walking or standing, and had a "mild restriction for prolonged sitting." (T at 154).  The ALJ afforded "great" weight to Dr. Henderson's findings, noting that the limitations assessed by the consultative examiner did not preclude Plaintiff from sitting for 6 hours in an 8-hour workday with regularly scheduled breaks. (T at 30-31).

However, Dr. Henderson, by his own admission, did not have any of Plaintiff's medical records available at the time of his examination.  (T at 150).  He likewise did not have the results of previous MRIs. (T at 153).  Thus, Dr. Henderson's findings were based entirely upon a single examination of Plaintiff.  It is well-settled that an opinion based upon a single examination deserves limited weight. See Crespo v. Apfel, No. 97 CIV 4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17,1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day.").

Furthermore, "the opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence" to override the treating physician's assessment. Garzona v. Apfel, No. 96 CV 6249, 1998 WL 643645, at *1 (E.D.N.Y. Sep. 18, 1998).  The issue is even more pronounced where, as here, the claimant suffers from  musculoskeletal impairments, which are inherently intermittent. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 1.00(D) (explaining that in the case of musculoskeletal impairments, "[b]ecause abnormal physical findings may be intermittent,

14

their presence over a period of time must be established by a record of ongoing management and evaluation").

Moreover, the consultative examiner's assessment of "mild" limitations with regard to prolonged sitting is insufficient, without more, to override the treating physician's highly-specific finding that Plaintiff was limited to sitting no more than 4 hours in an 8-hour work day, with the need for unscheduled and frequent rest periods lasting up to 15 minutes. See Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) ("While the opinions of treating or consulting physicians need not be reduced to any particular formula, [the consultative examiner's] opinion is so vague as to render it useless in evaluating whether [claimant] can perform sedentary work. In particular, [consultative examiner's] use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that [claimant] can perform the exertional requirements of sedentary work."); superceded by statute on other grounds, 20 C.F.R. § 404.1560(c)(2).

Accordingly, this Court finds that the ALJ erred by affording "great weight" to Dr. Henderson's assessment of Plaintiff's ability to sit for prolonged periods and that the assessment did not provide an appropriate basis for discounting the more detailed opinion offered by the treating physician.

### b.    Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See

Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.     [Plaintiff's] daily activities;

16

2.      The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;

3.      Precipitating and aggravating factors;

4.      The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;

5.      Treatment, other than medication [Plaintiff] receive[s]  or ha[s] received for relief of ... pain or other symptoms;

6.      Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

7.      Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, the ALJ concluded that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, persistence, and limited effects of the symptoms were not entirely credible.  (T at 29-30).

The ALJ's credibility determination was based upon essentially the same factors used to discount Dr. Grace's assessment – the purported lack of consistent positive findings, conservative course of treatment, activities of daily living, and the consultative examiner's report.  Thus, this Court finds the ALJ's credibility assessment flawed for the reasons stated above.

As was noted above, the ALJ's evaluation of the clinical findings amounted to the substitution of his medical judgment for that of the treating physician, the conservative course of treatment appears to have been the only course reasonably available, the

17

activities of daily living did not indicate an ability to sit for prolonged periods, and the consultative examiner's report was inadequately supported and insufficient to override the treating physician's detailed assessment.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

"In other situations, where [the] Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, [the Court has] opted simply to remand for a calculation of benefits." Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999).  A remand for calculation of benefits is warranted "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980); see also Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004).

Plaintiff initially applied for benefits nearly six (6) years ago.  The record contains copious notes, records, and reports from Plaintiff's treating physician, a neurosurgeon, and a consultative examiner, along with numerous MRI results and other clinical findings.  For the reasons outlined above, this Court finds that the ALJ erred by failing to give controlling weight to the highly detailed assessment of Plaintiff's treating physician, which established

an inability to perform sedentary work.  Thus, given the persuasive proof of disability and the completeness of the medical record, this Court finds that a remand for further evidentiary proceedings would serve no purpose and would only unfairly further delay this matter.

Accordingly, it is recommended that a remand be ordered solely for the calculation of benefits.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, that the Commissioner's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner for calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   January 19, 2011

19

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

20

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 19, 2011

Victor E. Bianchini
United States Magistrate Judge